## AMERICAN INDEMNITY CO. v. FIRST NAT. BANK IN CAMERON.

### No. 8374.

Court of Civil Appeals of Texas. Austin.

May 27, 1936.

Terry, Cavin & Mills, of Galveston, M. G. Cox, of Cameron, and Joyce Cox, of Galveston, for appellant.

Wallace & Wallace, of Cameron, for appellee First Nat. Bank in Cameron.

BAUGH, Justice.

R. S. Wiley, guardian of the person and estate of Phillip Satterwhite, a person of unsound mind, sued L. Van Perkins, former guardian, and the American Indemnity Company, surety on Perkins' guardianship bond, for failure of Perkins to deliver to plaintiff Wiley, his successor, the estate of said ward. The Indemnity impleaded appellee bank, hereinafter referred to as the bank; and the bank in turn impleaded Tilman J. Archer, whose name Perkins had forged to a check, in an attempt to restore to the estate of Satterwhite funds of such estate which Perkins had misappropriated. All parties to the suit filed pleadings setting up their respective claims or defenses. Trial was to the court without a jury, and judgment rendered in favor of Wiley, as guardian, against Perkins and appellant surety company, jointly and severally, on said bond, for $699.17; against the bank for $86.96; in favor of Archer against the bank for $699.19; in favor of the surety company against Perkins for the amount adjudged against it; and awarding to the

bank title to certain moneys and a $500 Milam county road bond listed as property of the estate of Satterwhite, but held by the bank pending the outcome of the controversy which resulted in the instant suit. The Indemnity Company alone has appealed.

The trial court filed extensive findings of fact, some of which are attacked; and refused to find others requested by appellant, of which complaint is made. A résumé of the transactions involved is necessary to a proper understanding of the issues presented.

Perkins, first as local post commander, and later as state commander, of the American Legion, had been handling accounts of veterans of the World War. He was, on January 13, 1933, appointed guardian of the person and estate of Satterwhite, and executed the bond required by law, with appellant as surety, on January 21, 1933. Early in March, 1933, there came into his possession a United States Treasury check for $797.93, payable to him as guardian of the estate of Satterwhite. At that time the banks were all closed under presidential proclamation. Perkins cashed this check at the post office in Cameron, and misappropriated the money. In December, 1932, there had come into Perkins' possession a United States Treasury check for $699.17, payable to Archer. Perkins, without the knowledge or consent of Archer, indorsed and deposited same to the credit of Archer in said bank. The bank did not know Archer nor his signature, but trusted Perkins entirely in the premises. On March 20, 1933, Perkins forged Archer's name to a check for $699.17, made payable to him as guardian of Satterwhite's estate, and deposited same, together with $98.76 in cash, in said bank to the credit of Satterwhite's estate, for the purpose of replacing the funds theretofore misappropriated by him. On April 16, 1934, Perkins filed in the probate court his first annual account as such guardian, showing receipts aggregating $1,071.68, which included additional Treasury checks received monthly, disbursements aggregating $758.38, and a cash balance in said bank of $313.30. Of the disbursements shown in said account, $485.65 had been paid out by him on April 3, 1933, in purchasing for the estate, under order of the probate court, a Milam county road bond. This account was approved by the county judge. Perkins tendered his resignation

as guardian on June 4, 1934, which was by the court accepted; on September 29, 1934, Wiley was appointed to succeed him; and on November 6, 1934, qualified as such guardian. Wiley thereupon demanded of Perkins and the bank possession of the moneys and property of his ward; failure to deliver which resulted in this suit.

Meantime, on or about May 17, 1934, the bank was advised by federal investigators that the indorsement on the Treasury check, payable to Archer, whereby the Archer account with the bank was opened, was a forgery; that the purported signature of Archer on the check, whereby the $699.17 was transferred from Archer's account to Perkins' account as guardian of the estate of Satterwhite, was also a forgery. This information the bank transmitted to Perkins, who agreed with the bank that it hold the funds involved and the Milam county road bond until the forgery question could be cleared up; and that, if forgery be shown, and the bank be held liable, then that such funds and bond should become the property of the bank. Neither Archer nor the surety company was a party to this agreement; nor was it approved by the county judge. Archer elected to hold the bank liable for the amount of the forged check; and judgment was rendered for him accordingly, from which no appeal is taken. As soon as the bank learned of the forgeries upon which it had opened an account for Archer and had thereafter transferred his funds to Perkins as guardian, it so advised appellant surety company.

The trial court found as a fact and concluded as a matter of law that, when the United States Treasury check payable to Archer was deposited to his credit, the bank held said funds in trust for Archer; that the forged check on that account, payable to Perkins as guardian and forged by him, transferred no right or title therein to the estate of Satterwhite; and that the bank, being compelled to make good to Archer the amount of such forged check, was entitled to the road bond and to the funds remaining from such check after paying for such bond.

No question is raised as to Perkins' defalcation nor as to appellant's liability on its bond. The contention here made is that the bank, because of its part in the transactions, should bear the loss and not the surety company.

The misappropriation by Perkins of the funds of his ward on or about March 10, 1933, is conclusively shown. The liability of the surety on his guardian's bond thereupon immediately attached. That liability could be discharged only by restoring to said estate the funds so taken. The only manner in which this was undertaken to be done was by a check upon a stranger to Satterwhite's estate, forged by the guardian himself, and payable to himself as such guardian. Archer did not repudiate the unauthorized indorsement made by Perkins on the Treasury check payable to him, and deposited to his (Archer's) account, thereby opening a bank account in his name; but, upon learning of it, ratified Perkins'. act by a claim against the bank for the money. This act of Perkins, therefore, has no bearing on the case here presented. That the bank was negligent with reference to Archer's account is clear. Under the well-settled law, the bank was charged with knowledge of the signature of its depositor, and will be held liable to him for the amount of his deposit paid out under a forged check. 6 Tex.Jur. p. 303, § 154, and cases cited. And the general rule is that, where a bank is negligent in paying a forged check on one of its depositors, it cannot recover its loss as against another bank through which such check is paid, nor from an individual innocent holder of such check. 6 Tex.Jur. p. 303, § 155. It cannot, as against its own negligence in such case, assert the negligence of others with whom it deals. But as tersely stated by the Supreme Court of Wisconsin in Fidelity & Cas. Co. v. Planenscheck, 200 Wis. 304, 227 N.W. 387, 389, 71 A.L.R. 331, 336, this rule "does not prohibit a bank from recovering from forgers, thieves, or from those who have no title to the instrument." And under the express provisions of section 23, art. 5932, R.S.1925, a forged instrument "is wholly inoperative, and no right * * * to enforce payment thereof against any party thereto, can be acquired through or under such signature." We conclude, therefore, that the trial court was correct in holding that no title to the funds transferred under such forged check passed to the estate of Satterwhite. The fact that the forgery was not discovered until after a part of these funds had been invested in the road bond does not alter the situation. If the estate had no right to the funds, it acquired none in the bond purchased with such funds. Nor does the statement of the account of said estate made by the bank to the surety company prior to the discovery of the forgery preclude the bank from a recovery. Even if such statement be treated as an "account stated," such statement may always be impeached on grounds of mistake, accident, or fraud. And in the instant case the account of the bank was with the estate of Satterwhite, through Perkins as guardian, and not with the surety company. Nor does an agreement, not authorized by the court, that the surety company should jointly supervise with Perkins, the account of said estate, affect the surety's liability on its bond. Perkins, under the statutes and by virtue of his appointment by the court as guardian, was charged with the management and control of his ward's estate, under the supervision and direction of the court. The surety company, merely by being surety on Perkins' bond, was given no authority to control the guardian's management of such estate. Its undertaking in the premises was that the guardian would do so according to law and to protect the estate of the ward against loss in case he failed to do so.

Appellant urges that, notwithstanding the forgery by Perkins, "his guilty knowledge should not be attributed to the estate, and it should be treated as a person without fault in receiving a check, and should be treated as a purchaser for value since Perkins owed the money." This contention is not sustained. While our conclusion that no title to said funds passed to the estate by the forged check renders this contention immaterial, it is, we think, clearly untenable.

The mere statement of a proposition that a surety on a guardian's bond can relieve itself from liability for the embezzlement by its principal of a trust fund, on the ground that the cestui que trustent acquired title to other funds as an innocent holder coming to it only by virtue of an instrument forged by the trustee himself, is sufficient, we think, to refute it.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.