Affirmed and Memorandum Opinion filed March 15, 2007











Affirmed and Memorandum Opinion filed March 15, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00925-CV

_______________

 

BARTHOLOMEW C. OKONKWO, Appellant

 

V.

 

WASHINGTON MUTUAL BANK, FA, Appellee

                                                                                                                                               


On Appeal from the 127th District Court

Harris County, Texas

Trial Court Cause No. 04-07637A

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

In this
dispute over allegedly unauthorized bank account transactions, Bartholomew C.
Okonkwo appeals a summary judgment granted in favor of Washington Mutual Bank,
FA (the ABank@). In twelve issues, Okonkwo
challenges the summary judgment on various procedural and substantive grounds. 
We affirm.

 








I.  Background

Prior to
filing this suit, Okonkwo, an attorney, maintained three checking accounts at
the Bank:  (1) a joint account in the names of ABartholomew C. Okonkwo and Yvonne L.
Okonkwo@; (2) a business account in the name
of AThe Galatians Group Medical Division@ (the AGalatians account@); and (3) an AIOLTA@ account in the name of ABartholomew & Associates Trustee
for Clients@ (the AIOLTA account@).[1]  In February
2002, Okonkwo discovered that a rent check drawn on the Galatians account had Abounced.@  He went to one of the Bank=s branch locations to determine why
this account was overdrawn.  While there, he sought to transfer funds from his
IOLTA account to the Galatians account to remedy the situation.  He discovered
that the IOLTA account was also overdrawn, apparently due to many withdrawals
made using the Bank=s internet banking service.  








Okonkwo
informed the unidentified Bank employee assisting him that he had never
authorized these withdrawals.  While there, Okonkwo asked the Bank to furnish
him complete records of his three accounts for the previous two years, replace
the illegally taken funds, close these accounts and open new ones, and
investigate the incidents.  The Bank employee advised Okonkwo to report the
unauthorized transactions to the Houston Police Department.  After reporting
this incident to the police, Okonkwo returned to the Bank branch and submitted
two forgery affidavit claims to its forgery department.[2] 
The first of Okonkwo=s two forgery affidavit claims, dated February 18, 2002,
included an addendum identifying several allegedly unauthorized items, ranging
in date from December 19, 2001 to January 11, 2002.  The bulk of these items
were not identified by check number or date paid, although most of them listed
to whom they were payable.  However, nothing on this form indicated in
which of his accounts these transactions occurred.[3] 
On the second forgery affidavit claim, dated February 25, 2002, Okonkwo
included an account number corresponding to his personal checking account. 
However, no specific items were identified on this form. 

Around
April 1, 2002, Okonkwo received a letter from the Bank=s forgery department notifying him it
was denying his claims.[4]  The Bank had
been unable to match the items identified on the forgery affidavit claims to
any transactions in Okonkwo=s accounts.[5]  However,
Okonkwo continued to communicate with the Bank=s forgery department, sending
numerous letters between June 2002 and March 2003 exhorting it to investigate
his case, return his funds, and provide him with his bank records.[6]  
He also returned to the Bank=s branch location in August 2003, but did not receive the
assistance he desired.  








On
February 13, 2004, Okonkwo filed this lawsuit against the Bank and numerous
other defendants,[7] alleging (1)
violations of the Deceptive Trade Practices Act (the ADTPA@), (2) common law fraud, (3)
negligence and gross negligence, (4) negligent hiring and supervision, (5)
breach of contract, (6) agency, and (7) respondeat superior.  The Bank filed a
motion for summary judgment, which the trial court granted.  In its interlocutory
order granting the summary judgment, the trial court specifically noted that Athe claims of plaintiff against other
parties remain pending.@  However, the Bank subsequently filed a motion for
severance, which was granted by the trial court.  Thus, the trial court entered
final judgment in this severed cause of action. 

II.  Okonkwo=s AProcedural@ Challenges to the Summary Judgment

As a
preliminary matter, we note that several of Okonkwo=s issues seemingly overlap and are
poorly articulated.[8] 
Notwithstanding the difficulties in discerning the issues presented, we
identify the following apparent procedural complaints regarding the summary
judgment granted in favor of the Bank.  In issues one, eight, and eleven,
Okonkwo alleges he did not receive notice of the submission date for the
motion, he failed to receive one of the attached exhibits, and the trial court
granted the Bank Aunsolicited@ summary judgment on several of Okonkwo=s claims. 

A.        Notice

In his
first issue, Okonkwo protests a lack of notice of the submission date for the
summary judgment motion.  The record reflects that Okonkwo was given the
required notice of the originally‑scheduled hearing date, and he timely
filed a response.  However, he complains that the trial court did not hold the
hearing when originally scheduled and instead considered the motion by
submission a few days later without any notice to him.








The
summary judgment movant must serve notice of the hearing or submission on
opposing counsel at least twenty‑one days before the hearing or
submission date.  See Tex. R.
Civ. P.  166a(c); Mosser v. Plano Three Venture, 893 S.W.2d 8, 11
(Tex. App.BDallas 1994, no writ).   The non‑movant must file his response not
later than seven days prior to the day of hearing.  See Tex. R. Civ. P. 166a(c).  However, lack
of notice of a summary judgment hearing is not a jurisdictional defect. See
French v. Brown, 424 S.W.2d 893, 894S95 (Tex. 1967).  Rather, lack of
notice is a procedural defect that may be corrected by the trial court in
response to a timely filed motion for new trial or by an appellate court if the
trial court overrules the motion for new trial.  See id. at 894.
Therefore, a non-movant must file a motion for new trial to preserve a
complaint that he did not receive notice of a summary judgment hearing.  See
id.; Smith v. Mike Carlson Motor Co., 918 S.W.2d 669, 672 (Tex. 
App.BFort Worth 1996, no writ) (citing Lee
v. Braeburn Valley W. Civic Ass=n, 786 S.W.2d 262, 263 (Tex. 1990); Tex. R. App. P. 33.1; see also
Tanksley v. CitiCapital Commercial Corp., 145 S.W.3d 760, 764 (Tex. App.BDallas 2004, pet. denied); Rios v.
Tex. Bank, 948 S.W.2d 30, 33 (Tex. App.BHouston [14th Dist.] 1997, no pet.). 
Here, Okonkwo did not raise this issue before the trial court in either of the
motions for new trial he filed after the summary judgment was granted.  Thus,
he has failed to preserve error on this issue.  








Moreover,
Rule 166a does not mandate an oral hearing in all cases.  Goode v. Avis Rent-A-Car,
Inc., 832 S.W.2d 202, 204 (Tex. App.BHouston [1st Dist.] 1992, writ
denied); Martin v. Cohen, 804 S.W.2d 201, 202S03 (Tex. App.BHouston [14th Dist.] 1991, no writ). 
Rather, a trial court may rule on a summary judgment motion, without a hearing,
on the basis of the written motion, response, and supporting summary judgment
evidence.  Martin, 804 S.W.2d at 202S03.  Further, the primary purpose of
the notice requirement under Rule 166a(c) is to allow the non-movant to
calculate the date on which his response or opposing affidavits are due.  Wortham
v. Dow Chem. Co., 179 S.W.3d 189, 197 (Tex. App.BHouston [14th Dist.] 2005, no pet.); Goode,
832 S.W.2d at 204.  Because the trial court considered the motion for summary
judgment by submission after the originally‑scheduled hearing date
and Okonkwo had timely filed a response, he was not harmed by lack of notice of
the submission date.  Cf. Martin v. Martin, Martin & Richards,
Inc., 989 S.W.2d 357, 359 (Tex. 1998)  (holding trial court=s grant of motion for summary
judgment without notice of submission to non‑movant was rendered harmless
when the trial court subsequently considered the non-movant=s response and reconfirmed its
ruling).  We overrule his first issue.

B.        Receipt of Exhibit

In his
eighth issue, Okonkwo complains that the Bank failed to attach a portion of an
exhibit to the copy of the summary judgment motion served on him.  This exhibit
consisted of the affidavit of Karen Rincon, the Bank=s corporate representative, which
Okonkwo contends he did not receive, and supporting evidence, all of which
Okonkwo apparently did receive.[9] 
Additionally, the affidavit and the supporting evidence were properly filed
with the trial court.

A
certificate by an attorney of record is prima facie evidence of the fact of
service.  Tex. R. Civ. P. 21a. 
Moreover, such a certificate creates a rebuttable presumption of service of
both the motion and all therein described supporting affidavits and exhibits.  See
Costello v. Johnson, 680 S.W.2d 529, 531‑32 (Tex. App.BDallas, 1984, writ ref'd n.r.e.) (AWe hold that the attorney=s certificate which refers to the
motion complies with rule 21a in that it is prima facie evidence that not only
was notice of the motion itself given but also of all >attached= and described supporting affidavits
and exhibits.@).








The Bank=s motion for summary judgment
specifically referred to the Rincon affidavit and outlined its contents in
detail.  Thus, the certificate of service included in our record presumptively
established that Okonkwo was properly served with the motion and its
accompanying exhibits.  In a paragraph labeled AMissing Evidence,@ Okonkwo stated in his response to
the Bank=s motion that this affidavit was not
enclosed in the copy he received.  However, such an unsworn statement does not
rebut the presumption that Okonkwo was properly served with the motion and
attached exhibits, including the Rincon affidavit.  See id.  Accordingly,
we overrule Okonkwo=s eighth issue.  

C.        AUnsolicited@ Summary Judgment[lby1] [lby2] 

In his
eleventh point of error, Okonkwo asserts that summary judgment was improper
because his claims or causes of action arising out of the Bank=s mishandling of his original claims
did not arise until the Bank finally denied all his claims in August 2002. 
Okonkwo has provided no argument in support of this contention, he did not
clearly identify this claim in his live pleadings, and he did not present this
argument to the trial court.   However, in the portion of his brief identified
in the table of contents as supporting this issue presentedCactually included in the AStatement of Facts@ section of his briefCentitled AUnsolicited Summary Judgment,@ Okonkwo claims that summary judgment
was granted on several of his claims Aeven though [the Bank] has never
asked for summary judgment on claims arising out of its mishandling of [Okonkwo=s] claims.@  In addition, Okonkwo asserted the
following in his summary judgment response:

Failure to
address all causes of actions claimed by [Okonkwo]:

24.       [Okonkwo]
alleged many other causes of actions in his live Amended Petition, which [the
Bank] did not even attempt to address, yet it is seeking summary judgment.  For
example, [Okonkwo] also alleged common law fraud and breach of contract, among
others, which [the Bank] failed to address.








However,
the Bank moved for summary judgment on all of Okonkwo=s claims, including violation of the
DTPA, fraud, negligence, and breach of contract.  In its motion, the Bank
specifically stated that it was Aentitled to summary judgment that
[Okonkwo] take nothing on his claims.@  The Bank further stated that Aeach of [Okonkwo=s] claims is barred@ and that the Bank had Ashown itself entitled to summary
judgment on each claim in this lawsuit.@  Thus, we interpret Okonkwo=s complaint as an attack on the specificity
of the summary judgment motion because all of Okonkwo=s claims were addressed by the Bank=s motion.[10] 


When a
summary judgment is attacked as being vague or lacking specificity, a special
exception is required.  Franco v. Slavonic Mut. Fire Ins. Ass=n, 154 S.W.3d 777, 784 (Tex. App.BHouston [14th Dist.] 2004, no pet.); see
also McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 342 (Tex.
1993) (plurality op.) (stating in dictum that Aan exception is required should a non‑movant
wish to complain on appeal that the grounds relied on by the movant were
unclear or ambiguous@).  The excepting party must obtain a ruling on the special
exception to preserve the issue for appeal.  Franco, 154 S.W.3d at 784. 
Okonkwo did not present this issue to the trial court for ruling; therefore, we
cannot consider it on appeal as grounds for reversal.  See id. at
784S85.  Okonkwo=s eleventh issue is overruled.

III.  Okonkwo=s ASubstantive@ Challenges to the Summary Judgment

In
issues two, three, four, five, six, seven, nine, ten, and twelve, Okonkwo
contends there are fact issues precluding summary judgment.  Okonkwo argues
that the Bank failed to conclusively establish that:  (1) the reporting
requirement for unauthorized withdrawals was shortened from one year to six
months; (2) Okonkwo received the relevant monthly bank statements and thus was
subject to the notice requirements of the U.C.C.; (3) it had not acted in bad
faith or negligently in handling his claims; (4) the statute of limitations
barred Okonkwo=s claims; (5) Okonkwo was not a consumer as defined by the DTPA; and (6)
the forfeiture of Galatians Group Medical Services Division, Inc.=s corporate status barred his claims.

A.        Standard of Review








The
movant for a traditional summary judgment must show there are no genuine issues
of material fact, and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); W. Invs.,
Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005).  In deciding whether there
is a disputed issue of material fact, every doubt must be resolved in favor of
the non-movant and evidence favorable to the non-movant must be taken as true. Fort
Worth Osteopathic Hosp., Inc. v. Reese, 148 S.W.3d 94, 99 (Tex. 2004).  A
defendant, as movant, is entitled to summary judgment if it (1) disproves at
least one element of the plaintiff=s theory of recovery, or (2) pleads
and conclusively establishes each essential element of an affirmative defense,
thereby rebutting the plaintiff=s cause of action. Am. Tobacco Co. v. Grinnell, 951
S.W.2d 420, 425 (Tex. 1997).  Once the defendant produces sufficient evidence
to establish its right to summary judgment, the burden shifts to the plaintiff
to come forward with competent controverting evidence raising a genuine issue
of material fact.  Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197
(Tex. 1995).  We may affirm the trial court=s summary judgment if any of the
theories presented to the trial court are meritorious, preserved for appellate
review, and necessary for final disposition of the appeal, including those
grounds preserved for review on which the trial court did not rule. See Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003); see
also Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 626 (Tex. 1996). 

B.        Grounds for Summary
Judgment

In its
motion for summary judgment, the Bank asserted the following bases for summary
judgment:

GROUND
ONE: Plaintiff failed to comply with
the U.C.C. notice requirements.

GROUND
TWO: Plaintiff=s negligence and DTPA claims are barred by
limitations, and all claims for all transactions occuring prior to February 11,
2001, are barred by limitations.








GROUND
THREE: Customer negligence. 
Plaintiff had a duty to review monthly  statements and report unauthorized
transactions within thirty (30) days.  His failure to do so bars his claims
under the U.C.C.

GROUND
THREE [sic]: Plaintiff is not a Aconsumer@
under the DTPA, and the Abusiness opportunity@ claim of Plaintiff under the DTPA is not viable.

GROUND
FOUR: Plaintiff=s claims for losses on the Galatians corporate account
cannot be asserted because the corporation has forfeited its corporate
franchise, and plaintiff lacks standing to assert the corporate claims.

The trial court
explicitly granted summary judgment as to grounds one, two, and three.

C.        Preclusion under the U.C.C.

In its
summary judgment motion, the Bank asserted that the Uniform Commercial Code[11]
(the AU.C.C.@) absolutely precluded Okonkwo from asserting
his claims in this case because he failed to provide adequate notice to the
Bank regarding the unauthorized transactions.  We agree.

Section
4.406(f) of the U.C.C. states,

Without
regard to care or lack of care of either the customer or the bank, a customer
who does not within one year after the statement or items are made available to
the customer (Subsection(a)) discover and report the customer=s unauthorized signature on or any alteration on the
item is precluded from asserting against the bank the unauthorized signature or
alteration.








Tex.
Bus. & Com. Code Ann.
' 4.406(f) (Vernon 2002).  This
statutory scheme provides for an allocation of responsibility between the
customer and a financial institution according to which party is best able to
prevent loss.  See Am. Airlines Employees Fed. Credit Union v. Martin,
29 S.W.3d 86, 92 (Tex. 2000).  Because a customer is Abest situated to detect unauthorized
transactions on his own account,@ he bears the burden to exercise
reasonable care to discover and report unauthorized transactions.  Id.  A[I]f the bank provides sufficient
information, the customer bears the loss when he fails to detect and notify the
bank about unauthorized transactions.@  Id.  ASufficient information@ is statutorily defined as a bank Asend[ing] or mak[ing] available to a
customer a statement of account showing payment of items for the account. . .
.  The statement of account provides sufficient information if the item is
described by item number, amount, and date of payment.@  Tex.
Bus. & Com. Code Ann. ' 4.406(a).  Furthermore, a bank is
not required to return items, such as cancelled checks, with its monthly
statements, but must instead provide a telephone number in the monthly
statements that the customer may call to request an item or legible copy of an
item.  Id. 








In his
affidavit attached to his response to the Bank=s motion for summary judgment,
Okonkwo averred that the Bank did not Aprovide@ him with Adetailed monthly statements.@  He further stated that the Bank did
not Aprovide@ him with cancelled checks from the
transactions at issue until he filed suit.  He contends this affidavit
established that his statutory  duty to discover and report unauthorized items
was not triggered because the Bank did not Aprovide@ him with his banking records.  We
disagree.  The plain language of the statute simply required the Bank to Asend or make available@ account statements.  The Bank=s summary judgment evidence
established that the Bank regularly mails monthly statements of account to
account holders.  These statements of account identify each debit by date,
dollar amount, and descriptive information (e.g., check number).  A
toll-free customer service number is listed at the top of each statement.[12] 
Thus, the Bank provided uncontroverted summary judgment evidence that it Asent or made available@ monthly account statements to
Okonkwo.  We conclude that Okonkwo therefore had a duty to discover and report
unauthorized items to the Bank in a timely fashion.  

However,
Okonkwo asserts that the Adiscovery rule@ or the equitable doctrine of
fraudulent concealment should operate to excuse him from his statutory duty to
discover and report.  These doctrines generally operate to defer accrual of a
cause of action when the statute of limitations would otherwise extinguish a
claim.  See S.V. v. R.V., 933 S.W.2d 1, 4S5, 6S7 (Tex. 1996).   Assuming, without
deciding, that the Adiscovery rule@ or an assertion of fraudulent
concealment would excuse Okonkwo from performing his statutory duty in this
situation,[13] he has
failed to raise fact issues on either doctrine.








The Adiscovery rule@ operates to defer accrual when the
injury at issue is inherently undiscoverable.  See id. at 7.  AAn injury is inherently undiscoverable
if it is by nature unlikely to be discovered within the prescribed limitations
period despite due diligence.@  Id.  The type of injury Okonkwo asserts here, i.e.,
unauthorized withdrawals from his bank account,  is not by nature unlikely to
be discovered during the prescribed period considering that the Bank maintained
records of his account transactions.  Moreover, the Bank provided competent
summary judgment evidence that it mailed Okonkwo=s monthly statements to him during
the relevant time period.  Had Okonkwo exercised due diligence, he would
certainly have discovered the allegedly unauthorized items during the
statutorily prescribed time frame.[14] 
Accordingly, the discovery rule did not excuse Okonkwo from performing his duty
to discover and report the unauthorized transactions. 

As to
his assertion that the Bank Aconcealed@ his records from him, fraudulent concealment Ais an equitable doctrine that, when
properly invoked, estops a defendant from relying on the statute of
limitations as an affirmative defense. . . .@  Casey v. Methodist Hosp.,
907 S.W.2d 898, 902 (Tex. App.BHouston [1st Dist.] 1995, no writ) (emphasis added). 
Estoppel by fraudulent concealment requires a showing that the defendant (1)
had actual knowledge of the wrong, (2) a duty to disclose the wrong, and (3) a
fixed purpose to conceal the wrong.  See id.  Once a defendant has
conclusively established the affirmative defense of limitations,[15]
a plaintiff must come forward with proof raising a fact issue regarding the
elements of fraudulent concealment.  See id. 








Okonkwo
provided no competent summary judgment evidence raising a fact issue regarding
the elements of fraudulent concealment.  Specifically, he provided no proof
that the Bank had  a fixed purpose in concealing the unauthorized
transactions.  Although he stated in his affidavit that the Bank Aconcealed@ his bank records from him and Arefused to produce@ them, such uncorroborated and
conclusory statements of his subjective belief are insufficient to create a
fact issue.  See Tex. Div.‑Tranter, Inc., 876 S.W.2d at 314. 
Accordingly, Okonkwo failed to establish the application of the equitable
doctrine of fraudulent concealment.  We must therefore consider whether Okonkwo
raised a fact issue regarding whether he fulfilled his duty to notify and
report the unauthorized items during the statutorily allotted time-frame.[16]


Okonkwo
asserted in his live pleadings that the Bank provided information regarding
unauthorized activity on his accounts Aon or about February 13, 2002.@  Thus, construing his pleadings in
the light most favorable to Okonkwo, we conclude that he had until February 13,
2003 to report these unauthorized items to the Bank.  Although a report
regarding unauthorized items need not be written, the customer must make known
to the bank the specific item on which the unauthorized signature appears.  Hatcher
Cleaning Co. v. Comerica Bank-Tex., 995 S.W.2d 933, 938 (Tex. App.SFort Worth 1999, no pet.).  General
references to possible unauthorized items are not sufficient; both the
unauthorized item(s) and the account(s) should be identified.  See id.
If there is no genuine issue of material fact regarding the sufficiency of the
customer report, summary judgment is appropriate.  See id. at 938.








The only
summary judgment evidence of any Areport@ to the Bank regarding the
unauthorized items consisted of the two forgery affidavit claims filed by
Okonkwo with the Bank=s forgery department.[17] 
As detailed above, in one of these claim forms, Okonkwo identified several
specific transactions without indicating to which of his accounts the form
referred.  In the other, Okonkwo identified an account number without
describing any specific transactions.  We conclude that these forms are
insufficient to constitute a customer Areport@ as contemplated by the statute.[18] 
See id. at 938-39.   Because Okonkwo did not discover and report the
unauthorized transactions to the Bank within the statutorily allotted one-year
time frame, he is  precluded from asserting them against the Bank, regardless
of the Bank=s alleged lack of care in handling his claims.[19] 
Thus, summary judgment was proper on this ground.  We overrule issues two,
three, four, five, six, seven, nine, ten, and twelve.

III.  Conclusion

We
conclude that Okonkwo=s procedural complaints regarding the summary judgment are
without merit, and summary judgment was proper based on the Bank=s statutory affirmative defense. 
Accordingly, we overrule all of Okonkwo=s issues and affirm the judgment of
the trial court.

 

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed March 15, 2007.

Panel consists of Chief Justice
Hedges and Justices Yates and Seymore.









[1]  These are the accounts specifically identified by
the Bank in the account agreements attached to its motion for summary
judgment.  In his live petition, Okonkwo characterizes what is seemingly his
joint account with Yvonne C. Okonkwo as a business account in the name of his
law firm.  However, because the issue of which accounts form the basis of this
lawsuit is not disputed by Okonkwo, we will refer to them as they are
identified on the account agreements provided by the Bank.





[2]  The Bank attached copies of Okonkwo=s forgery affidavit claims to its motion for summary
judgment.





[3]  The forgery affidavit claim form states, AEnter the account number involved in the claim.  You
will need to fill out a separate Forgery Affidavit Claim for each account if
more than one account is involved.@





[4]  No copy of this correspondence is included in our
record.





[5]  Copies of account statements for all three of
Okonkwo=s accounts for the period covered by his forgery
affidavits were attached to the Bank=s
motion for summary judgment.





[6] Copies of these letters were attached to Okonkwo=s response to the Bank=s summary judgment motion.  In these letters, Okonkwo did not identify
either the transactions or accounts about which he had concerns, although he
referenced the claim number he was assigned.  On November 6, 2003, Okonkwo sent
another letter (again, with no account numbers identified) to the Bank=s forgery department, demanding that it forward his
bank records to him within thirty days, after which he would file suit.  The
record contains no evidence that any of these letters were received by the
Bank. 





[7]  The other defendants are not parties to this appeal.





[8]  Additionally, Okonkwo does not separate the argument
section of his brief by issue presented.  Indeed, the headings in his argument
section bear little resemblance to the twelve issues he identifies.  Moreover,
several of the issues listed in the table of contents direct us to the same page
number, and several of these pages actually appear in the AStatement of Facts@
section of his brief.  Thus, it is difficult to determine what arguments he
presents in support of his issues.





[9]  Okonkwo identified and responded to several of the
items attached to the Rincon affidavit in his response to the Bank=s summary judgment motion. 





[10]  Okonkwo has not asserted in the trial court or on
appeal that the grounds relied on by the Bank in its summary judgment motion
are not sufficient to defeat all his claims. 





[11]  Title 1 of the Texas Business and Commerce Code,
including the sections specified in the Bank=s
summary judgment motion, may be cited as the Uniform Commercial Code.  Tex. Bus. & Com. Code Ann. ' 1.01(a) (Vernon Supp. 2006).





[12]  In addition, the Bank established that it makes
available copies of account statements and other records through its customer
service department.  Okonkwo produced no evidence that he attempted to obtain
copies of his statements from the Bank=s
customer service department.  He states in his affidavit that the Bank Aconcealed@
his bank records from him and Arefused to
produce@ them.  These statements are conclusory, and thus
insufficient to create a fact issue.  See Tex. Div.-Tranter, Inc. v.
Carrozza, 876 S.W.2d 312, 314 (Tex. 1994). 





[13]  Okonkwo has cited, and we have found, no authority
that these doctrines would operate to defer a bank customer=s statutorily imposed duty to discover and report
unauthorized items.  Indeed, application of these equitable doctrines in this
situation would seemingly subvert the Legislature=s decision to allocate responsibility between the customer and a
financial institution according to which party is best able to prevent loss.  See
Am. Airlines Employees Fed. Credit Union, 29 S.W.3d at 92.  





[14]  In fact, Okonkwo actually discovered at least some
of these transactions during the prescribed notification period.  The Bank
provided uncontroverted summary judgment evidence that the date of the most
recent transaction Okonkwo disputed was January 11, 2002.  Okonkwo states in
his live pleadings that he discovered the problems with his accounts Aon or about February 13, 2002.@  





[15]  Generally, Aa
cause of action accrues when a wrongful act causes some legal injury, even if
the fact of injury is not discoverable until later, and even if all resulting
damages have not yet occurred.@  S.V.,
933 S.W.2d at 4.  





[16]  The Bank also asserted in its summary judgment
motion that the parties had contractually shortened the one-year statutory
notice time period to six months.  Such contractual arrangements shortening the
notice period may be permissible.  See Am. Airlines Employees Fed. Credit
Union, 29 S.W.3d at 96.  However, we need not consider whether the one-year
notice period was reduced because, as next explained, Okonkwo failed to
establish he provided the requisite notice to the Bank at all.





[17]  Our record contains no indication that Okonkwo
offered any information regarding specific unauthorized transactions in any of
his accounts, such as dates or amounts of any unauthorized items, other than
that provided in his forgery affidavit claims. Further, our record includes no
competent summary judgment evidence establishing that he did so. 





[18]  Moreover, Okonkwo was aware in early April 2002 that
the Bank had denied his forgery claims.  It is undisputed that the most recent
unauthorized transaction occurred on January 11, 2002.  Thus, Okonkwo was aware
of the Bank=s difficulty in identifying any unauthorized
transactions through the information he had provided it within the allotted
time period for reporting such transactions.  He provided no evidence of any
attempt made to clarify his claims or otherwise Areport@ these unauthorized transactions to the Bank.





[19] Okonkwo presents no argument or authority that this
preclusion should not operate to bar all his claims, including those that
allegedly arose out of the Bank=s purported
mishandling of his claims.  On its face, the statute relieves both a customer
and a bank from liability for a lack of care.  See Tex. Bus. & Com. Code Ann. ' 4.406(f).  Moreover, although Okonkwo asserts the
Bank did not establish it acted in Agood
faith@ in paying the items, good faith is presumed, and the
customer bears the burden of proving the contrary.  See Canfield v. Bank One,
51 S.W.3d 828, 837 (Tex. App.STexarkana 2001,
pet. denied). 













 [lby1]Spacing
errors









 [lby2]C.        AUnsolicited@ Summary Judgment