Henry A. **CANFIELD,**
**et al., Appellants,**

v.

**BANK ONE, TEXAS, N.A., Appellee.**

No. 06–00–00149–CV.

Court of Appeals of Texas,
Texarkana.

Submitted April 4, 2001.

Decided July 5, 2001.

Rehearing Overruled Aug. 7, 2001.

---

John W. Berkel, John W. Berkel, PC, Houston, for appellants.

Eric S. Lipper, S. David Smith, Michael D. Conner, Hirsch & Westheimer, PC, Houston, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Henry A. Canfield, Canfield Enterprises, Inc., and Canfield Enterprises Employee Pension Trust (Canfield) brought suit against Bank One, Texas, N.A. (Bank One) to recover for 213 wrongfully paid items, including forged checks and cashed-out certificates of deposit, that were charged

against Canfield's account. Canfield alleged breach of contract, negligence, and violations of the Texas Deceptive Trade Practices Act (DTPA). Bank One moved for summary judgment based on the failure to perform an enforceable condition precedent contained in TEX. BUS. & COM. CODE ANN. § 4.406 (Vernon 1994), *amended by* Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 4, 1995 Tex. Gen. Laws 4582, 4639.[1] The trial court granted summary judgment, and Canfield appeals.

Bank One was the depository bank for Canfield's personal account, business account, and individual retirement account, which consisted of three certificates of deposit (accounts). The accounts were governed by a written deposit agreement. Pursuant to this agreement, Bank One sent Canfield monthly statements[2] on each of his accounts containing the account statement, processed checks, and deposits.

During 1990, Dorothy Canfield, Henry Canfield's ex-wife, began forging Henry Canfield's signature on his individual account and on the accounts for Canfield Enterprises, Inc. and Canfield Enterprises Employee Pension Trust. Canfield did not authorize his ex-wife to sign his name to any of the accounts, although Canfield did allow her to endorse checks for deposit and handle the statements on the accounts. Over a two- and one-half-year period, Canfield claims that 213 items were wrongfully paid by Bank One as a result of the forgeries. There were 79 teller transactions included within this total. The total amount of items purported to be wrongfully paid was up to $165,000.00. Canfield first discovered the contested transactions and questioned Bank One in April 1993. He did not allege that Bank One had wrongfully disbursed the items and challenge the payments until May 11, 1993.

Canfield sued Bank One, alleging liability for payment of checks based on forged signatures. Canfield asserts that Bank One had either ineffective or no procedures to protect against wrongful disbursements, or if such procedures were in place, they were inadequate. Bank One moved for summary judgment on the basis of TEX. BUS. & COM.CODE ANN. § 4.406(b), which provides a fourteen-day limitations period to contest questionable disbursements, and TEX. BUS. & COM.CODE ANN. § 4.406(d), which provides a one-year limitations period from the time account statements were sent. The trial court granted Bank One's motion for summary judgment.

Canfield contends that the fourteen-day requirement of Section 4.406(b) requires the exercise of ordinary care that Bank One did not fulfill; that Section 4.406(b), (d) requires Bank One to establish its good faith in payment, which has not been shown; that the DTPA claims are an independent cause of action from the Texas Business and Commerce Code (sometimes Business Code) and were wrongfully subsumed in the summary judgment; that Bank One's duties of ordinary care and good faith under the depository agreement and the Business Code are the same; and that, at least to some contested disbursements, no limitations period asserted by Bank One should apply.

 Summary judgment is proper when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a

---

1. Because of material changes to TEX. BUS. & COM.CODE ANN. § 4.406, this statute is cited prior to the amendment, and all references are to the version as it existed before the 1995 amendment.

2. The record is silent as to the frequency of the statements for the certificates of deposit. The last known statement was sent to Canfield no later than January 13, 1993.

matter of law. Tex.R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex.1979); *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377 (Tex.App.—Texarkana 1989, no writ). The question on appeal is not whether the summary judgment proof raises a fact issue with reference to the essential elements of the plaintiff's cause of action, but whether the summary judgment proof establishes that the movant is entitled to summary judgment as a matter of law. *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex.1990). A movant without the burden of proof is entitled to summary judgment if the evidence disproves as a matter of law at least one element of the claim. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). When the movant moves for summary judgment on reliance of an affirmative defense, the motion shall be granted on proving each element of the defense as a matter of law. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). Because the movant bears the burden of proof, all conflicts in the evidence are disregarded, evidence favorable to the non-movant is taken as true, and all doubts as to the genuine issue of material fact are resolved in favor of the nonmovant. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■■■ A bank is conclusively presumed to know the signature of a depositor and may not charge that depositor's account with the amounts of any checks not signed by the depositor, no matter how artistic the forgery and regardless of whether the bank was negligent. *Hatcher Cleaning Co. v. Comerica Bank–Texas*, 995 S.W.2d 933, 937 (Tex.App.—Fort Worth 1999, no pet.); *Oak Cliff Bank & Trust Co. v. Aetna Cas. & Sur. Co.*, 436 S.W.2d 165, 168 (Tex. Civ.App.—Dallas 1968, no writ). When a customer deposits funds with a bank, the bank impliedly agrees to disburse those funds only in accordance with the depositor's instructions. *La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 564 (Tex.1984). Where the drawer's signature is forged, the drawer cannot be liable since his valid signature does not appear on the instrument. *Hatcher Cleaning Co.*, 995 S.W.2d at 937; *see* Tex. Bus. & Com.Code Ann. § 3.401 (Vernon Supp.2001). A bank may only charge against a customer's account any item properly payable from that account. Tex. Bus. & Com.Code Ann. § 4.401 (Vernon Supp.2001); *Hatcher Cleaning Co.*, 995 S.W.2d at 937.

■■ However, a depositor is under a duty to examine his or her statements within a reasonable time (fourteen days under the statute discussed below) and notify the bank of any forgeries. *Oak Cliff Bank & Trust Co.*, 436 S.W.2d at 168. If the bank proves that the depositor failed to exercise ordinary care to examine or that the depositor's negligence prevented the bank from promptly and effectively exercising its right to seek and compel restoration from the person committing the forgeries, or from otherwise avoiding or mitigating its loss, then the depositor may be said to have acquiesced to the correctness of the statement rendered by the bank and of charging the checks to that depositor's account. *Id.*

A customer cannot assert his or her unauthorized signature against a bank when one wrongdoer makes a series of unauthorized transactions, on the same account, if the customer fails to discover and report the first unauthorized transaction within fourteen days.[3] Tex. Bus. & Com. Code Ann. § 4.406(b)(2); *Am. Airlines Employees Fed. Credit Union v. Martin*, 29 S.W.3d 86, 91 (Tex.2000). This defense

---

**3.** The statute as amended in 1995 alters the time period from fourteen days to thirty days.

is not available when the bank has failed to exercise ordinary care in paying the items. TEX. BUS. & COM.CODE ANN. § 4.406(c); *Martin*, 29 S.W.3d at 91. Since this case is an appeal of a summary judgment, this Court will view the evidence in favor of Canfield, and we will assume that the acceptance of purportedly forged documents rendered Bank One in violation of its duty to exercise ordinary care.

■ However, a bank has a second defense in that a customer is absolutely precluded from asserting his or her unauthorized signature on an item against the bank if the customer fails to discover and report the unauthorized signature within a year from the time the bank makes the item available and the account statement showing the transaction. TEX. BUS. & COM. CODE ANN. § 4.406(d); *Martin*, 29 S.W.3d at 91. The Business Code places a duty on a depositor to promptly examine his or her bank statement and report to the bank the discovery of any "unauthorized signature or any alteration...." TEX. BUS. & COM.CODE ANN. § 4.406(a); *La Sara Grain Co.*, 673 S.W.2d at 561. There is an absolute time limit of one year for a customer to assert his or her right to make a claim for payment on a forged paper without regard to the care, or lack thereof, of either the customer or the bank. TEX. BUS. & COM.CODE ANN. § 4.406(d); *La Sara Grain Co.*, 673 S.W.2d at 562; *Hatcher Cleaning Co.*, 995 S.W.2d at 937. At this time, the customer's only claim is that the items were not paid in good faith. *La Sara Grain Co.*, 673 S.W.2d at 562. The time limits of Section 4.406 apply only to items paid in good faith. *See* TEX. BUS. & COM.CODE ANN. § 4.406(c); *La Sara Grain Co.*, 673 S.W.2d at 562. The test for good faith is the actual belief of the party in question, not the reasonableness of that belief. *La Sara Grain Co.*, 673 S.W.2d at 563.

This statutory scheme reflects an underlying policy decision that promotes the Uniform Commercial Code's (UCC) "objective of promoting certainty and predictability in commercial transactions." *Martin*, 29 S.W.3d at 92; *see also* TEX. BUS. & COM.CODE ANN. § 1.101 (Vernon 1994). The UCC facilitates financial transactions, to the benefit of both consumers and financial institutions, by allocating responsibility among the parties according to whoever is best able to prevent a loss. *Martin*, 29 S.W.3d at 92. The customer is most familiar with his or her own signature and should know whether a particular withdrawal or check was authorized; thus, the customer can prevent further unauthorized activity better than a financial institution, which may process thousands of transactions daily. *Id.* Section 4.406 acknowledges that the customer is in the best position to detect unauthorized transactions on his or her account, and it places the burden on the customer to exercise reasonable care to discover and report unauthorized transactions. *Id.* The customer's duty to exercise this care is triggered when the bank satisfies its burden to provide sufficient information to the customer. As a result, if the bank provides sufficient information, the customer bears the loss when he or she fails to detect and notify the bank about unauthorized transactions. *Id.*

■ To assert a claim against the bank based on an unauthorized signature, except any allegation that the bank did not act in good faith, a customer must comply with the duty to discover and report within one year. *Id.* at 95. The notice requirement of Section 4.406(d) is similar to a condition precedent. *Id.* The ability to recover for unauthorized transactions is conditioned on discovering and reporting those transactions within the specified time period. *Id.*

Section 4.103(a) permits parties to vary the effect of Chapter 4's provisions by agreement, as long as the agreement does not disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care, or limit the measure of damages for such a lack or failure by the bank. TEX. BUS. & COM.CODE ANN. § 4.103(a) (Vernon Supp. 2001); *Martin,* 29 S.W.3d at 95; *Basse Truck Line, Inc. v. First State Bank,* 949 S.W.2d 17, 21 (Tex.App.—San Antonio 1997, writ denied); *Tumlinson v. First Victoria Nat'l Bank,* 865 S.W.2d 176, 177 (Tex.App.—Corpus Christi 1993, no writ). Deposit agreements, which may shorten the statutory time limits on the notice required to be given by a customer, are enforceable as a contract between the parties. *Martin,* 29 S.W.3d at 96. The UCC draws a careful distinction between disclaiming liability, which a bank is not permitted to do, and limiting the time period during which a bank can be charged with liability for paying unauthorized items, which a bank is permitted to do. TEX. BUS. & COM.CODE ANN. § 4.103(a); *Martin,* 29 S.W.3d at 97. Deposit agreements are consistent with the UCC. *Martin,* 29 S.W.3d at 97. The ninety-day notice period contained in the deposit agreement between Canfield and Bank One is not an unreasonably short period of time. *See id.; Tumlinson,* 865 S.W.2d at 178. Regarding any items falling within ninety days before Canfield's notice, Bank One's negligence is relevant. *See Tumlinson,* 865 S.W.2d at 178. If a bank has not exercised ordinary care in paying a forged item, it is precluded from asserting the depositor's negligence in failing to examine the statement and notify the bank. *Id.* If Bank One fails to establish ordinary care in paying the items, then the bank's negligence, if any, presents a fact question with regard to any unauthorized signatures occurring within ninety days

before the time Canfield notified Bank One. *See id.*

The primary purpose of limitations statutes is to compel the exercise of a right of action within a reasonable time. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990); *Rogers v. Ricane Enterprises, Inc.,* 930 S.W.2d 157, 166 (Tex. App.—Amarillo 1996, writ denied). Limitations statutes are not directed to the merits of the case, and the fact that such statutes might render a meritorious claim nonassertable is an unfortunate, occasional by-product of their operation. *Robinson v. Weaver,* 550 S.W.2d 18, 20 (Tex.1977); *Rogers,* 930 S.W.2d at 166. A defendant who asserts the running of limitations as a bar to a cause of action bears the burden of showing that limitations barred the suit. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983); *Hansler v. Mainka,* 807 S.W.2d 3, 5 (Tex.App.—Corpus Christi 1991, no writ).

A condition precedent limits a claim because it requires an aggrieved party to first perform a specified act before commencing an action. *Basse Truck Line, Inc.,* 949 S.W.2d at 21–22. Conditions precedent are consistent with the goals of the UCC and general public policy. *Id.* A shortened period to bring litigation encourages vigilance by both parties to a deposit contract, thus making continued fraud or wrongdoing less likely. *Id.* As long as it is reasonable and in conformance with the requisites of contract law, a shortened period of limitations is legally valid. *Id.* Contractual precedents and shortened periods of limitations have been routinely accepted in banking relationships. *Id.* Such provisions are compatible with statute and case law. *Id.* They are also in accord with public policy by limiting disputes in a society where millions of bank transactions occur every day. *Id.*

■ The last purported forgery took place in December 1992. The statements from this final period of wrongdoing by Dorothy Canfield were disclosed in January 1993, including notice of disbursement of the certificates of deposit. Canfield approached Bank One regarding the status of his accounts on April 13, 1993, but it was not until May 11, 1993, that Canfield first informed Bank One there was a problem with his accounts. At that time, Canfield still did not claim that forgery had depleted his accounts. This failure to inform the bank is sufficient factual basis to support summary judgment that Canfield did not meet the condition precedent of informing Bank One within ninety days. Thus, to avoid the application of Section 4.406(d), which was contractually shortened by the deposit agreement, Canfield must raise the issue that Bank One acted in bad faith.

■ The law presumes, without proof to the contrary, that business transactions are done in good faith and for an honest purpose. *Compton, Ault & Co. v. Marshall,* 88 Tex. 50, 29 S.W. 1059, 1059 (1895). A party who alleges that acts are done in bad faith, or for a dishonest or fraudulent purpose, takes the burden of proving such bad faith. *Id.* The test for good faith, i.e., honesty in fact in the conduct or transaction, is the actual belief of the party in question. It is not assessed by the reasonableness of the belief. *La Sara Grain Co.,* 673 S.W.2d at 563; *Rogers,* 930 S.W.2d at 175. Bad faith is not simply bad judgment or negligence. Bad faith implies a conscious wrongdoing due to a dishonest purpose or moral obliquity. *Rogers,* 930 S.W.2d at 175. Bad faith is not negligence in that it requires a state of mind that affirmatively acts with furtive design or ill will. *Id.* Bad faith may be inferred from unheeded suspicious circumstances of a substantial character, although the evidence adduced is insufficient

of itself to support a finding that the taker had actual knowledge of the defect of the instrument. *Fenner v. Am. Sur. Co.,* 156 S.W.2d 279, 283 (Tex.Civ.App.—Waco 1941, writ ref'd w.o.m.).

■ Bad faith is normally a question of fact. *Citizens Bridge Co. v. Guerra,* 152 Tex. 361, 258 S.W.2d 64, 69 (1953). The test is good or bad faith, not diligence or negligence. *Id.* Knowledge of facts merely sufficient to cause one of ordinary prudence to make inquiry is not evidence of bad faith. *Id.* Gross negligence is not bad faith, even though it may be evidence tending to prove bad faith. *Id.* To constitute evidence of bad faith, the facts known to the taker must be able to reasonably form the basis for an inference that in acquiring the instrument, with knowledge of such facts, the taker acted in dishonest disregard. *Id.* Willful ignorance is the equivalent of bad faith. *Id.* at 69–70. Bad faith may be shown by a willful disregard of and refusal to learn the facts when available at hand. *Id.* at 70. Bad faith means that the person taking the instrument must have had knowledge of such substantial facts and circumstances as to create in his or her mind a suspicion that there was something wrong with the title of the person from whom it was taken, with the instrument itself, or with the money represented by such instrument, combined with an intentional disregard of and refusal on the part of the taker of the instrument to learn the facts from the means of knowledge which he or she knows are at hand. *Id.*

■ There is no evidence that raised the fact issue that Bank One had any knowledge of the forgeries. There is also no indication that Bank One exercised willful disregard in not ascertaining that forgeries were taking place or that Bank One simply refused to learn the facts available to it. The fact that there were over 200 forgeries is alarming. The fact that 79 of

these involved teller transactions where Canfield's ex-wife forged his name and submitted the document in person might amount to negligence or even gross negligence on the part of Bank One. However, there is no indication in the record of bad faith or suspicious circumstances of bad faith on the part of the bank that would allow Canfield to avoid the limitations requirement of Section 4.406. Summary judgment was appropriate.

■■■ To prevail on an action brought under the DTPA, the party must be a consumer. *See generally Kennedy v. Sale,* 689 S.W.2d 890, 892–93 (Tex.1985). Whether a party is a consumer under the DTPA is a question of law. *Hand v. Dean Witter Reynolds Inc.,* 889 S.W.2d 483, 496 (Tex.App.—Houston [14th Dist.] 1994, writ denied). A plaintiff establishes standing as a consumer in terms of his or her relationship to a transaction, not by a contractual relationship with the defendant. *Birchfield v. Texarkana Mem'l Hosp.,* 747 S.W.2d 361, 368 (Tex.1987). The only requirement is that the goods or services sought or acquired by the consumer form the basis of the complaint. *Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705, 707 (Tex.1983).

■■■ Money is not a type of "goods" or "tangible chattel" as defined by the DTPA. *Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169, 174 (Tex.1980). Money is a currency of exchange that enables the holder to acquire goods. *Id.* "Services" under the DTPA is "action or use that furthers some end or purpose: conduct or performance that assists or benefits someone or something: deeds useful or instrumental toward some object." *Id. (quoting Van Zandt v. Fort Worth Press,* 359 S.W.2d 893, 895 (Tex.1962)). "Services" indicate an activity on behalf of one party performed by another. *Lewis,* 603 S.W.2d at 174. But, if the sole objective of the transaction is for an intangible such as

establishing a bank account, thereby creating an account receivable, then consumer status is not reached. *Hand,* 889 S.W.2d at 500. All transactions involve human service to some extent. *Id.* at 499. It could then be argued that every transaction involves the purchase of services under the DTPA. *Id.* If this were true, services arising from the sale of intangibles would give rise to consumer status even though the actual purchase did not. *Id.* This would undermine the intent of the Legislature to exclude the sale of intangibles from the DTPA. *Id.* To avoid this situation, some activities related to the sale of intangibles must not be services under the DTPA. *Id.*

■■■ The underlying purpose of the DTPA is to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty. TEX. BUS. & COM. CODE ANN. § 17.44 (Vernon Supp.2001); *Frost Nat'l Bank v. Heafner,* 12 S.W.3d 104, 111 (Tex.App.—Houston [1st Dist.] 1999, pet. denied). The services provided by a bank in connection with a checking account are within the scope of the DTPA. *La Sara Grain Co.,* 673 S.W.2d at 564. Under his breach of contract claim, Canfield alleged that Bank One breached the deposit account agreement when it paid the forged checks. Under his DTPA claim, Canfield alleges that Bank One misrepresented the safety and security of deposited funds, safeguards to prevent unauthorized withdrawals, and the attributes of the services it offered. These assertions amount to nothing more than a complaint that Bank One did not comply with the terms of the deposit account agreement and, if true, Bank One's actions contrary to its representations would result only in a breach of contract claim. *See Heafner,* 12 S.W.3d at 111.

■■■ The DTPA does not define the term "warranty." *La Sara Grain Co.,* 673

S.W.2d at 565. The act does not create any warranties; therefore, any warranty must be established independently of the act. *Id.* Express warranties are imposed by the agreement of the parties to a contract. *Id.* Implied warranties are created by operation of law and are grounded more in tort law than in contract law. *Id.* Implied warranties are derived primarily from statute, although some have their origin in common law. *Id.* The UCC is a statutory source of implied warranties. Tex. Bus. & Com.Code Ann. §§ 2.314, 2.315 (Vernon 1994); *La Sara Grain Co.*, 673 S.W.2d at 565. The UCC imposes a number of warranties on customers and collecting banks in the payment process, but there is no warranty by a payer bank in favor of its customer. Tex. Bus. & Com.Code Ann. § 4.207 (Vernon Supp.2001); *La Sara Grain Co.*, 673 S.W.2d at 565. A bank's implied promise that it will not pay checks on an unauthorized signature is not a warranty, but only an implied term of the contract. *La Sara Grain Co.*, 673 S.W.2d at 565. A mere breach of contract is not a violation of the DTPA. *Id.; Basse Truck Line, Inc.*, 949 S.W.2d at 21. The actions of Bank One in paying checks on an unauthorized signature do not constitute "false, misleading or deceptive acts or practices in the conduct of any trade or commerce." *See La Sara Grain Co.*, 673 S.W.2d at 565–66; *Basse Truck Line, Inc.*, 949 S.W.2d at 21. Canfield was informed of the bank's actions via monthly account statements.

■ An allegation of breach of contract, without more, does not constitute a false, misleading, or deceptive act in violation of the DTPA. *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex.1996). Nonperformance under a contractual obligation does not equate to misrepresentation under the DTPA. If so, then every breach of contract would be converted to a DTPA claim. *See id.* The statements, or lack thereof, by Bank One with regard to its

policies on verifying signatures did not cause the harm to Canfield. Bank One caused harm to Canfield by accepting the forged items. This failure to uphold the deposit account agreement is governed by contract law, not the DTPA. *See id.* at 14–15.

■ The mere purchase of a certificate of deposit does not confer consumer status under the DTPA. *Hand*, 889 S.W.2d at 500; *First Fed. Sav. & Loan Ass'n v. Ritenour*, 704 S.W.2d 895, 899 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). However, the purchase of financial counseling services, collateral to the purchase of a certificate of deposit, can confer consumer status. *Hand*, 889 S.W.2d at 500; *Ritenour*, 704 S.W.2d at 900. The key determination to be made is whether the service was an objective of the transaction or merely incidental. *Hand*, 889 S.W.2d at 500. When a transaction's central objective is the acquisition of an intangible, the collateral service must be an important objective of the transaction and not merely incidental. *Id.* Services such as assistance in filling out an application, financial counseling, and processing of paperwork might confer consumer status in some circumstances, but if there is no complaint about the collateral activities, then consumer status cannot be met. *Hand*, 889 S.W.2d at 499; *see Riverside Nat'l Bank*, 603 S.W.2d at 175.

■ The mere purchase of a certificate of deposit is seeking only for money to be paid in the future. *First State Bank v. Chesshir*, 613 S.W.2d 61, 62 (Tex.Civ. App.—Amarillo), *rev'd on other grounds*, 620 S.W.2d 101 (Tex.1981); *see Ritenour*, 704 S.W.2d at 899. Money is not "goods" under the DTPA, and acts to acquire money are not attempts to acquire services as defined by the DTPA. *Lewis*, 603 S.W.2d at 174–75; *Chesshir*, 613 S.W.2d at 62; *see Ritenour*, 704 S.W.2d at 899. Canfield does not contend that he sought or ac-

quired any ancillary services in the purchase of the certificates of deposit, nor does he contend that the bank provided any other services that would provide a basis for a DTPA action. *See Ritenour*, 704 S.W.2d at 899; *Chesshir*, 613 S.W.2d at 62 n. 3. Canfield's complaint regards the actions of Bank One in wrongfully distributing the certificates of deposit. In the absence of a claim regarding collateral services related to the certificates of deposit, Canfield did not seek goods or services as defined by the DTPA. *See Lewis*, 603 S.W.2d at 175; *Ritenour*, 704 S.W.2d at 899. The record is void of any evidence of counseling, advice, or any other collateral services on the part of Bank One to the purchase of the certificates of deposit. *See Ritenour*, 704 S.W.2d at 899–900. Therefore, Canfield is not a consumer under the DTPA in relation to the certificates of deposit. *See id.* Thus, summary judgment was appropriate on Canfield's DTPA claims.

The judgment is affirmed.