

# NUMBER 13-09-162-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

LONE STAR NATIONAL BANK,                           **Appellant,**

**v.**

USVALDO MARTINEZ AND
MARIO RODRIGUEZ,                              **Appellees.**

## On appeal from the County Court at Law No. 3
## of Cameron County, Texas.

# MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Yañez and Vela
## Memorandum Opinion by Justice Vela

Appellant, Lone Star National Bank, appeals a judgment granted in favor of

appellees, Usvaldo Martinez and Mario Rodriguez ("Martinez") after a non-jury trial. The

trial court awarded appellees $39,000 in damages based on seven checks that appellees claimed contained unauthorized forged signatures. The trial court also awarded $30,000 in attorney's fees. Lone Star raises four issues on appeal, urging that Martinez is precluded from relying on the unauthorized signatures of the first five checks because the evidence conclusively established Lone Star's statutory defense that Martinez failed to report the unauthorized signatures within sixty days as required by the deposit agreement. Lone Star also claims that it is entitled to have the judgment reversed because the trial court's conclusion that Lone Star acted unconscionably in failing to specifically point out a sixty day notice provision in the contract between Lone Star and Martinez is contrary to recent Texas Supreme Court authority. Lone Star additionally argues that Martinez is precluded from relying on the unauthorized signatures on the last two checks because he did not obtain a finding that Lone Star failed to pay the checks in good faith. We reverse and render, in part, and reverse and remand, in part.

## I. BACKGROUND

Martinez had a business account with Lone Star. Rodriguez was a signatory on the account. Both Martinez and Rodriguez were engaged in a construction business. They filed a lawsuit against Lone Star, claiming that it wrongfully paid seven checks from a Lone Star checking account, because each check contained an unauthorized signature. The seven checks in question were cashed on July 15, 2003, July 18, 2003, July 29, 2003, August 18, 2003, September 18, 2003, November 4, 2003, and November 28, 2003. Martinez did not review any of his account statements or discover any of the unauthorized payments until December 2003. The checks were allegedly cashed by Joe Sanchez, a young man who was living at Martinez's house and worked part time for him. After

2

Martinez discovered that his account did not contain the correct amount of funds, he found a book at his home in which Sanchez had allegedly been practicing Martinez's signature. Martinez, believing that Sanchez had forged his signature on checks, filed a complaint with the police department. On December 9, 2003, Martinez notified Lone Star of the last two unauthorized payments and on December 15, 2003, he notified Lone Star of the five earlier ones. When Lone Star refused to refund the funds, Martinez filed suit against Lone Star, asserting causes of action for wrongful control, wrongful offset, fraud, violations of the Texas Deceptive Trade Practices Act, breach of fiduciary duty, breach of the duty of good faith and fair dealing, and negligent account administration. After hearing testimony, the trial court entered judgment in Martinez's favor. The trial court also entered findings of fact and conclusions of law, concluding that Martinez was not provided specific notice of the sixty-day requirement for discovering and reporting an unauthorized signature at the time the agreement was entered into by both parties, and because they were not provided specific notice, the provision was unconscionable and void.

## II. STANDARD OF REVIEW

An appellate court reviews the trial court's findings of fact for legal and factual sufficiency; it reviews the court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Corpus Christi Housing Authority v. Lara*, 267 S.W.3d 222, 226 (Tex. App.–Corpus Christi 2008, no pet.).

In reviewing for legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict. *See AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008). The test for legal sufficiency "must always be whether the evidence at trial

would enable [a] reasonable and fair-minded [fact finder] to reach the [result] under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Legal sufficiency review must credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *Id.* The fact finder is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *Id.* at 819.

### III. ANALYSIS

### A. The First Five Checks

Lone Star argues in its first issue that it is entitled to judgment as a matter of law on the first five checks because the trial court found, and the evidence conclusively established, that Martinez did not give timely notice of the forgeries. Lone Star relies on the statutory defense that a bank customer is absolutely precluded from asserting an unauthorized signature on an item against the bank if the customer fails to discover and report the unauthorized signature as set forth in the statute or as otherwise contracted. *See* TEX. BUS. & COM. CODE ANN. § 4.406(f) (Vernon 2002); *Am. Airlines Employees Fed. Credit Union v. Martin*, 29 S.W.3d 86, 89 (Tex. 2000). With respect to the first five checks, notice was not given within sixty-days, as set forth in the contract between Lone Star and Martinez. Notably, the trial court found that the sixty-day notice requirement was not specifically pointed out to appellees and that Lone Star's employees made "minimal efforts" to comply with the safeguards in place for verifying identification of persons presenting checks for payment. The court also found that Lone Star provided the monthly statements to Martinez and that Martinez failed to reconcile the statements. Martinez asserts that

4

claims based on unauthorized signatures are not barred unless Lone Star shows it paid the items in good faith and was not negligent. He also urges that Lone Star's failure to exercise ordinary care is relevant, and the trial court's third and fourth conclusions of law were either correct or are irrelevant.

Section 4.406(f) of the Texas Business and Commerce Code imposes upon the bank customer the duty to discover and report an unauthorized signature within one year from the date the bank statement showing payment of the items from the account is made available to the customer:

> *Without regard to care or lack of care of either the customer or the bank,* a customer who does not within one year after the statement or items are made available to the customer (Subsection(a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration.

*Id*. § 4.406(f) (emphasis added).

The limitation is without regard to whether either Martinez or Lone Star exercised ordinary care. *Id*.

Section 4.103(a) of the Texas Business and Commerce Code allows parties to vary the effect of article 4's provisions by agreement as long as the parties do not "disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure." *Id*. § 4.103(a). The Texas Supreme Court, in a scenario similar to this one, ruled that the statutory notice period may be altered by agreement to sixty days. *Martin*, 29 S.W.3d at 89. To assert a claim against a bank based upon an unauthorized signature, a customer must comply with the duty to discover and report. *Id*. at 99. The statutory scheme allocates responsibility among the parties

5

according to whoever is in the best position to prevent the loss. *Id*. "Because the customer is more familiar with his own signature, and should be able to know whether or not he authorized a particular withdrawal or check, he can prevent further unauthorized activity better than a financial institution . . . ." *Id*. at 92. The agreement between Lone Star and Martinez with respect to reporting unauthorized signatures was, as follows:

> You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any unauthorized payments or alterations, you must promptly notify us of the relevant facts. If you fail to do either of these duties, you will have to share the loss with us, or bear the loss entirely yourself (depending on whether we used ordinary care and, if not, whether we contributed to the loss) . . .
>
> You agree that the time you have to examine your statement and report to us will depend on the circumstance, but will not, in any circumstance, exceed a total of 30 days from when the statement is first made available to you.
>
> *You further agree that if you fail to report any unauthorized signatures, alterations, forgeries or any other errors in your account within 60 days of when we make the statement available, you cannot assert a claim against us on any item in that statement, and the loss will be entirely yours. This 60 day limitation is without regard to whether we exercised ordinary care*.

(Emphasis added.)

Martinez testified that he was the owner of the account. He agreed that Lone Star made no representations regarding the account. He said he didn't read the contract that he signed with Lone Star, but he acknowledged that he agreed to the terms when he signed it. He also admitted that he didn't review the bank statements when he received them.

A party who signs a document is presumed to know its contents. *In re Int'l Profit Assoc., Inc.*, 286 S.W.3d 921, 922 (Tex. 2009). Failure to point out a contractual provision

6

does not make the provision unenforceable. *Id*. at 923-24. Simply being unaware of a clause does not make it invalid. *Id*. Parties to a contract are obligated to protect themselves by reading what they sign and, absent evidence of fraud or overreaching, cannot be excused from the consequences of the failure to read the contract. *Id.* at 924.

Here, there was no finding or evidence of fraud or overreaching. The trial court's judgment specifically states that it is based upon the ground that the sixty-day contractual notice is unenforceable and void. This conclusion was clearly an error of law as the supreme court specifically determined that the one-year notice in section 4.406(f) may be contractually modified to sixty days as it was in the contract between Lone Star and Martinez. *See Martin*, 29 S.W.3d at 89. The trial court's conclusion that the contract was void or unconscionable because it was not specifically pointed out to Martinez is supported by neither the facts nor the relevant law and will not support the judgment. *See In re Int.'l Profit Assoc. Inc.*, 286 S.W.3d at 923-24.

In fact, Martinez does not actually contest that he failed to comply with the sixty-day notice requirement. He also does not argue, in response to Lone Star's arguments, that the notice provision was void or unconscionable. Rather, he argues that Lone Star did not act in good faith. Because the trial court did not find that Lone Star did not act in good faith, the issue narrows, then, to whether good faith is taken into consideration under the defense set forth in section 4.406 and, if so, whether such a finding can be implied in this case. *See* TEX. BUS. & COM. CODE ANN. § 4.406.

Section 4.406 creates at least two defenses. A customer may not assert an unauthorized signature against the bank when a single wrongdoer makes a series of

7

unauthorized transactions on the account and the customer fails to discover and report the first transaction within thirty days of the time the bank provides the account statement. *Id.* § 4.406(d).

Section 4.406(d) is not a defense to the bank by the express provisions of section 4.406(e) if the bank does not pay in good faith. *See id.* § 4.406(e). However, another defense, set forth in section 4.406(f) does not contain similar language. *See id.* § 4.406(f). It states that the defense is without regard to the bank's care or lack of care, but is silent with regard to the bank's failure to act in good faith. *Id.* § 4.406(f). Regardless, the supreme court clearly suggests in *Martin* that under section 4.406: "To assert a claim against the bank based on an unauthorized signature (*absent any allegation that the bank did not act in good faith*), a customer must comply with the duty to discover and report within one year." *Martin*, 29 S.W.3d at 95 (emphasis added).

Here, the trial court's findings specifically addressed only the unenforceability of the contract. There was no finding that Lone Star did not act in good faith. Rule 299 of the Texas Rules of Civil Procedure provides:

> When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment.

TEX. R. CIV. P. 299.

The burden to prove lack of good faith is on the bank customer. *Id.* § 4.406(e) ("If the customer proves that the bank did not pay the item in good faith, the preclusion under

Subsection (d) does not apply"); *see Canfield v. Bank One,* 51 S.W.3d 828, 837 (Tex. App.–Texarkana 2001, pet. denied). The test for good faith is the actual belief of the party, not the reasonableness of that belief. *Id*. at 835. Good faith, however, is presumed, and the customer bears the burden of proving the contrary. *Canfield,* 51 S.W.3d at 837. Because the burden of proof is on the customer, it is a defense to the preclusive effect of the defenses set forth in section 4.406. Martinez had the burden to prove that Lone Star failed to exercise honesty-in-fact and failed to observe reasonable commercial standards of fairness. TEX. BUS. & COM. CODE ANN. § 1.201(b)(20) (Vernon 2009).

Rule 299 prohibits implying findings of fact in support of any claim when no element of the claim or defense has been included in the fact findings. TEX. R. CIV. P. 299. Here, the trial court's findings do not include any element of Martinez's defense that the bank did not pay the items in good faith. The trial court, in its findings, discusses neither honesty in fact nor failure to observe reasonable commercial standards of fairness. Because no element of the defense is included in the trial court's express findings of fact, we may not imply a finding that Lone Star failed to act in good faith.

Even assuming that we could imply a finding that Lone Star failed to act in good faith, there must be evidence to support this defense. Ordinary care is defined in the business and commerce code as "observance of reasonable commercial standards." TEX. BUS. & COM. CODE § 3.103(a)(9) (Vernon Supp. 2009). Good faith is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing." *Id*. § 1.201 (b)(20). The comment to the code suggests that "fair dealing" is concerned with the fairness of conduct rather than the care with which an act was performed. TEX. BUS. & COM. CODE ANN. § 3.103 cmt. 5 (Vernon 2002). Failure to exercise ordinary care in

9

conducting a transaction is an entirely different concept than failure to deal fairly in conducting the transaction. *Id.* Bad faith "is not negligence in that it requires a state of mind that affirmatively acts with furtive design or ill will." *Canfield*, 51 S.W.3d at 837.

Here, there was no evidence offered at trial that the bank knew the checks were not properly presented. There is nothing to suggest that the Lone Star employees who cashed the checks knew that the checks in question had been forged. While Martinez offered evidence at trial that the bank tellers didn't follow the minimum standards set out in the teller manual when cashing the checks, primarily because the presenter of the checks used a social security card rather than a form of identification called for in the teller's manual, there is nothing in the record to suggest the any of the tellers acted in bad faith. Martinez's bad faith defense fails as a matter of law. Having concluded that the trial court's conclusions of law were based on an erroneous interpretation of Texas law, that no element of Martinez's defense to the preclusive effect of section 4.406 was included in the trial court's fact findings, and that there was no evidence of bad faith on the part of Lone Star, we sustain Lone Star's first and second issues.

## B. The Last Two Checks

By its third issue, Lone Star urges that Martinez is precluded from asserting the unauthorized signatures on the last two checks under section 4.406(d)(2) of the Texas Business and Commerce Code because Martinez failed to promptly notify the bank of the unauthorized signatures on the first five checks, and the last two checks were signed by the same wrongdoer as the first five checks. Lone Star paid the last two checks before it received notice of the unauthorized signatures. *See Id.* 4.406(d)(2).

The last two checks, numbered 1598 and 1599, were cashed on November 4, 2003 and November 12, 2003. Both checks were reported in Martinez's statement dated November 28, 2003. Lone Star was notified of the checks on December 9, 2003, which was less than 60 days. Lone Star argues that Martinez is precluded by section 4.406(d) from asserting the unauthorized signatures on the last two checks. Section 4.406(d) states, in relevant part:

> the customer's unauthorized signature or alteration by the same wrongdoer on any item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding 30 days, in which to examine the item or statement of account and notify the bank.

*Id*. § 4.406(d).

The evidence at trial was undisputed that all of the unauthorized signatures were made by the same wrongdoer, that payment on all checks was made before Lone Star received notice from Martinez about the unauthorized checks, and that payment on the last two checks was made after Martinez had been given a reasonable period of time to examine the account statements. The statute describes a reasonable period of time as "not exceeding 30 days." *Id*. § 4.406(d)(2). Thus, Martinez is precluded from asserting the unauthorized signature unless he established and obtained a finding that Lone Star did not pay the check in good faith. *See Canfield*, 51 S.W.3d at 837. There was no evidence of lack of good faith on the part of Lone Star as previously discussed under our analysis of issues one and two.

Lone Star also argues that Martinez is not entitled to relief under section 4.406(e). TEX. BUS. & COM. CODE ANN. § 4.406(e). Section 4.406(e) provides that if "subsection (d)

11

applied and the customer proves that the bank failed to exercise ordinary care in paying the item and that the failure contributed to the loss, the loss is allocated between the customer precluded and the bank asserting the preclusion according to the extent to which the failure of the customer to comply with subsection (c) and the failure of the bank to exercise ordinary care contributed to the loss." *Id*. § 4.406(e). While Martinez did not obtain a specific finding that Lone Star failed to exercise ordinary care in paying the last two checks, the court did find that Lone Star made "minimal efforts" to comply with its own internal safeguards. Further, there was evidence admitted that could have supported a finding that Lone Star tellers were negligent because they did not ask Sanchez for the forms of identification set forth in the bank's procedures manual. The trial court impliedly found that Lone Star was negligent. Under the statute, the loss should be allocated between the customer and the bank according to the extent to which the failure of the customer and the failure of the bank each contributed to the loss. *Id*. § 4.406 (e). Because the trial court failed to allocate the loss pursuant to the statute, we reverse and remand for a new trial only with respect to the last two checks.

## IV. Conclusion

The judgment with respect to check number 1448 for $6,500, check number 1446 for $6,450, check number 1450 for $8,000, check number 1449 for $5,500, and check number 1447 for $3,500 is reversed and rendered that Martinez take nothing. With respect to the last two checks, number 1599 for $5,800 and number 1598 for $3,350, the judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

The judgment of the trial court is reversed and rendered, in part, and reversed and remanded, in part.


ROSE VELA
Justice


Delivered and filed the 25th
day of March, 2010.