NUMBER 13-09-162-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 

 

LONE STAR NATIONAL BANK, Appellant,

 

v. 


USVALDO MARTINEZ AND 

MARIO RODRIGUEZ, Appellees.

 


On appeal from the County Court at Law No. 3 

of Cameron County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Vela


Memorandum Opinion by Justice Vela



 Appellant, Lone Star National Bank, appeals a judgment granted in favor of
appellees, Usvaldo Martinez and Mario Rodriguez ("Martinez") after a non-jury trial. The
trial court awarded appellees $39,000 in damages based on seven checks that appellees
claimed contained unauthorized forged signatures. The trial court also awarded $30,000
in attorney's fees. Lone Star raises four issues on appeal, urging that Martinez is
precluded from relying on the unauthorized signatures of the first five checks because the
evidence conclusively established Lone Star's statutory defense that Martinez failed to
report the unauthorized signatures within sixty days as required by the deposit agreement. 
Lone Star also claims that it is entitled to have the judgment reversed because the trial
court's conclusion that Lone Star acted unconscionably in failing to specifically point out
a sixty day notice provision in the contract between Lone Star and Martinez is contrary to
recent Texas Supreme Court authority. Lone Star additionally argues that Martinez is
precluded from relying on the unauthorized signatures on the last two checks because he
did not obtain a finding that Lone Star failed to pay the checks in good faith. We reverse
and render, in part, and reverse and remand, in part. 

I. Background

 Martinez had a business account with Lone Star. Rodriguez was a signatory on the
account. Both Martinez and Rodriguez were engaged in a construction business. They
filed a lawsuit against Lone Star, claiming that it wrongfully paid seven checks from a Lone
Star checking account, because each check contained an unauthorized signature. The
seven checks in question were cashed on July 15, 2003, July 18, 2003, July 29, 2003,
August 18, 2003, September 18, 2003, November 4, 2003, and November 28, 2003. 
Martinez did not review any of his account statements or discover any of the unauthorized
payments until December 2003. The checks were allegedly cashed by Joe Sanchez, a
young man who was living at Martinez's house and worked part time for him. After
Martinez discovered that his account did not contain the correct amount of funds, he found
a book at his home in which Sanchez had allegedly been practicing Martinez's signature. 
Martinez, believing that Sanchez had forged his signature on checks, filed a complaint with
the police department. On December 9, 2003, Martinez notified Lone Star of the last two
unauthorized payments and on December 15, 2003, he notified Lone Star of the five earlier
ones. When Lone Star refused to refund the funds, Martinez filed suit against Lone Star,
asserting causes of action for wrongful control, wrongful offset, fraud, violations of the
Texas Deceptive Trade Practices Act, breach of fiduciary duty, breach of the duty of good
faith and fair dealing, and negligent account administration. After hearing testimony, the
trial court entered judgment in Martinez's favor. The trial court also entered findings of fact
and conclusions of law, concluding that Martinez was not provided specific notice of the
sixty-day requirement for discovering and reporting an unauthorized signature at the time
the agreement was entered into by both parties, and because they were not provided
specific notice, the provision was unconscionable and void.

II. Standard of Review

 An appellate court reviews the trial court's findings of fact for legal and factual
sufficiency; it reviews the court's conclusions of law de novo. BMC Software Belgium, N.V.
v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); Corpus Christi Housing Authority v. Lara,
267 S.W.3d 222, 226 (Tex. App.-Corpus Christi 2008, no pet.). 

 In reviewing for legal sufficiency of the evidence, we consider the evidence in the
light most favorable to the verdict. See AutoZone, Inc. v. Reyes, 272 S.W.3d 588, 592
(Tex. 2008). The test for legal sufficiency "must always be whether the evidence at trial
would enable [a] reasonable and fair-minded [fact finder] to reach the [result] under
review." City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). Legal sufficiency
review must credit favorable evidence if a reasonable fact finder could, and disregard
contrary evidence unless a reasonable fact finder could not. Id. The fact finder is the sole
judge of the credibility of the witnesses and the weight to be assigned to their testimony. 
Id. at 819. 

III. Analysis

A. The First Five Checks

 Lone Star argues in its first issue that it is entitled to judgment as a matter of law on
the first five checks because the trial court found, and the evidence conclusively
established, that Martinez did not give timely notice of the forgeries. Lone Star relies on
the statutory defense that a bank customer is absolutely precluded from asserting an
unauthorized signature on an item against the bank if the customer fails to discover and
report the unauthorized signature as set forth in the statute or as otherwise contracted. 
See Tex. Bus. & Com. Code Ann. § 4.406(f) (Vernon 2002); Am. Airlines Employees Fed.
Credit Union v. Martin, 29 S.W.3d 86, 89 (Tex. 2000). With respect to the first five checks,
notice was not given within sixty-days, as set forth in the contract between Lone Star and
Martinez. Notably, the trial court found that the sixty-day notice requirement was not
specifically pointed out to appellees and that Lone Star's employees made "minimal efforts"
to comply with the safeguards in place for verifying identification of persons presenting
checks for payment. The court also found that Lone Star provided the monthly statements
to Martinez and that Martinez failed to reconcile the statements. Martinez asserts that
claims based on unauthorized signatures are not barred unless Lone Star shows it paid the
items in good faith and was not negligent. He also urges that Lone Star's failure to
exercise ordinary care is relevant, and the trial court's third and fourth conclusions of law
were either correct or are irrelevant.

 Section 4.406(f) of the Texas Business and Commerce Code imposes upon the
bank customer the duty to discover and report an unauthorized signature within one year
from the date the bank statement showing payment of the items from the account is made
available to the customer:

 Without regard to care or lack of care of either the customer or the
bank, a customer who does not within one year after the statement or items
are made available to the customer (Subsection(a)) discover and report the
customer's unauthorized signature on or any alteration on the item is
precluded from asserting against the bank the unauthorized signature or
alteration. 


Id. § 4.406(f) (emphasis added).

 

 The limitation is without regard to whether either Martinez or Lone Star exercised
ordinary care. Id. 

 Section 4.103(a) of the Texas Business and Commerce Code allows parties to vary
the effect of article 4's provisions by agreement as long as the parties do not "disclaim a
bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the
measure of damages for the lack or failure." Id. § 4.103(a). The Texas Supreme Court,
in a scenario similar to this one, ruled that the statutory notice period may be altered by
agreement to sixty days. Martin, 29 S.W.3d at 89. To assert a claim against a bank based
upon an unauthorized signature, a customer must comply with the duty to discover and
report. Id. at 99. The statutory scheme allocates responsibility among the parties
according to whoever is in the best position to prevent the loss. Id. "Because the customer
is more familiar with his own signature, and should be able to know whether or not he
authorized a particular withdrawal or check, he can prevent further unauthorized activity
better than a financial institution . . . ." Id. at 92. The agreement between Lone Star and
Martinez with respect to reporting unauthorized signatures was, as follows:

 You must examine your statement of account with "reasonable
promptness." If you discover (or reasonably should have discovered) any
unauthorized payments or alterations, you must promptly notify us of the
relevant facts. If you fail to do either of these duties, you will have to share
the loss with us, or bear the loss entirely yourself (depending on whether we
used ordinary care and, if not, whether we contributed to the loss) . . .


 You agree that the time you have to examine your statement and
report to us will depend on the circumstance, but will not, in any
circumstance, exceed a total of 30 days from when the statement is first
made available to you.


 You further agree that if you fail to report any unauthorized signatures,
alterations, forgeries or any other errors in your account within 60 days of
when we make the statement available, you cannot assert a claim against
us on any item in that statement, and the loss will be entirely yours. This 60
day limitation is without regard to whether we exercised ordinary care.


 (Emphasis added.) 


 Martinez testified that he was the owner of the account. He agreed that Lone Star
made no representations regarding the account. He said he didn't read the contract that
he signed with Lone Star, but he acknowledged that he agreed to the terms when he
signed it. He also admitted that he didn't review the bank statements when he received
them. 

 A party who signs a document is presumed to know its contents. In re Int'l Profit
Assoc., Inc., 286 S.W.3d 921, 922 (Tex. 2009). Failure to point out a contractual provision
does not make the provision unenforceable. Id. at 923-24. Simply being unaware of a
clause does not make it invalid. Id. Parties to a contract are obligated to protect
themselves by reading what they sign and, absent evidence of fraud or overreaching,
cannot be excused from the consequences of the failure to read the contract. Id. at 924. 
 Here, there was no finding or evidence of fraud or overreaching. The trial court's
judgment specifically states that it is based upon the ground that the sixty-day contractual
notice is unenforceable and void. This conclusion was clearly an error of law as the
supreme court specifically determined that the one-year notice in section 4.406(f) may be
contractually modified to sixty days as it was in the contract between Lone Star and
Martinez. See Martin, 29 S.W.3d at 89. The trial court's conclusion that the contract was
void or unconscionable because it was not specifically pointed out to Martinez is supported
by neither the facts nor the relevant law and will not support the judgment. See In re Int.'l
Profit Assoc. Inc., 286 S.W.3d at 923-24. 

 In fact, Martinez does not actually contest that he failed to comply with the sixty-day
notice requirement. He also does not argue, in response to Lone Star's arguments, that
the notice provision was void or unconscionable. Rather, he argues that Lone Star did not
act in good faith. Because the trial court did not find that Lone Star did not act in good
faith, the issue narrows, then, to whether good faith is taken into consideration under the
defense set forth in section 4.406 and, if so, whether such a finding can be implied in this
case. See Tex. Bus. & Com. Code Ann. § 4.406. 

 Section 4.406 creates at least two defenses. A customer may not assert an
unauthorized signature against the bank when a single wrongdoer makes a series of
unauthorized transactions on the account and the customer fails to discover and report the
first transaction within thirty days of the time the bank provides the account statement. Id. 
§ 4.406(d). 

 Section 4.406(d) is not a defense to the bank by the express provisions of section
4.406(e) if the bank does not pay in good faith. See id. § 4.406(e). However, another
defense, set forth in section 4.406(f) does not contain similar language. See id. § 4.406(f). 
It states that the defense is without regard to the bank's care or lack of care, but is silent
with regard to the bank's failure to act in good faith. Id. § 4.406(f). Regardless, the
supreme court clearly suggests in Martin that under section 4.406: "To assert a claim
against the bank based on an unauthorized signature (absent any allegation that the bank
did not act in good faith), a customer must comply with the duty to discover and report
within one year." Martin, 29 S.W.3d at 95 (emphasis added).

 Here, the trial court's findings specifically addressed only the unenforceability of the
contract. There was no finding that Lone Star did not act in good faith. Rule 299 of the
Texas Rules of Civil Procedure provides:

 When findings of fact are filed by the trial court they shall form the basis of
the judgment upon all grounds of recovery and of defense embraced therein. 
The judgment may not be supported upon appeal by a presumed finding
upon any ground of recovery or defense, no element of which has been
included in the findings of fact; but when one or more elements thereof have
been found by the trial court, omitted unrequested elements, when supported
by evidence, will be supplied by presumption in support of the judgment.


Tex. R. Civ. P. 299.


 The burden to prove lack of good faith is on the bank customer. Id. § 4.406(e) ("If
the customer proves that the bank did not pay the item in good faith, the preclusion under
Subsection (d) does not apply"); see Canfield v. Bank One, 51 S.W.3d 828, 837 (Tex.
App.-Texarkana 2001, pet. denied). The test for good faith is the actual belief of the party,
not the reasonableness of that belief. Id. at 835. Good faith, however, is presumed, and
the customer bears the burden of proving the contrary. Canfield, 51 S.W.3d at 837. 
Because the burden of proof is on the customer, it is a defense to the preclusive effect of
the defenses set forth in section 4.406. Martinez had the burden to prove that Lone Star
failed to exercise honesty-in-fact and failed to observe reasonable commercial standards
of fairness. Tex. Bus. & Com. Code Ann. § 1.201(b)(20) (Vernon 2009). 

 Rule 299 prohibits implying findings of fact in support of any claim when no element
of the claim or defense has been included in the fact findings. Tex. R. Civ. P. 299. Here,
the trial court's findings do not include any element of Martinez's defense that the bank did
not pay the items in good faith. The trial court, in its findings, discusses neither honesty
in fact nor failure to observe reasonable commercial standards of fairness. Because no
element of the defense is included in the trial court's express findings of fact, we may not
imply a finding that Lone Star failed to act in good faith.

 Even assuming that we could imply a finding that Lone Star failed to act in good
faith, there must be evidence to support this defense. Ordinary care is defined in the
business and commerce code as "observance of reasonable commercial standards." Tex.
Bus. & Com. Code § 3.103(a)(9) (Vernon Supp. 2009). Good faith is defined as "honesty
in fact and the observance of reasonable commercial standards of fair dealing." Id. § 1.201
(b)(20). The comment to the code suggests that "fair dealing" is concerned with the
fairness of conduct rather than the care with which an act was performed. Tex. Bus. &
Com. Code Ann. § 3.103 cmt. 5 (Vernon 2002). Failure to exercise ordinary care in
conducting a transaction is an entirely different concept than failure to deal fairly in
conducting the transaction. Id. Bad faith "is not negligence in that it requires a state of
mind that affirmatively acts with furtive design or ill will." Canfield, 51 S.W.3d at 837. 

 Here, there was no evidence offered at trial that the bank knew the checks were not
properly presented. There is nothing to suggest that the Lone Star employees who cashed
the checks knew that the checks in question had been forged. While Martinez offered
evidence at trial that the bank tellers didn't follow the minimum standards set out in the
teller manual when cashing the checks, primarily because the presenter of the checks used
a social security card rather than a form of identification called for in the teller's manual,
there is nothing in the record to suggest the any of the tellers acted in bad faith. Martinez's
bad faith defense fails as a matter of law. Having concluded that the trial court's
conclusions of law were based on an erroneous interpretation of Texas law, that no
element of Martinez's defense to the preclusive effect of section 4.406 was included in the
trial court's fact findings, and that there was no evidence of bad faith on the part of Lone
Star, we sustain Lone Star's first and second issues.

B. The Last Two Checks

 By its third issue, Lone Star urges that Martinez is precluded from asserting the
unauthorized signatures on the last two checks under section 4.406(d)(2) of the Texas
Business and Commerce Code because Martinez failed to promptly notify the bank of the
unauthorized signatures on the first five checks, and the last two checks were signed by
the same wrongdoer as the first five checks. Lone Star paid the last two checks before it
received notice of the unauthorized signatures. See Id. 4.406(d)(2).

 The last two checks, numbered 1598 and 1599, were cashed on November 4, 2003
and November 12, 2003. Both checks were reported in Martinez's statement dated
November 28, 2003. Lone Star was notified of the checks on December 9, 2003, which
was less than 60 days. Lone Star argues that Martinez is precluded by section 4.406(d)
from asserting the unauthorized signatures on the last two checks. Section 4.406(d)
states, in relevant part:

 the customer's unauthorized signature or alteration by the same wrongdoer
on any item paid in good faith by the bank if the payment was made before
the bank received notice from the customer of the unauthorized signature or
alteration and after the customer had been afforded a reasonable period of
time, not exceeding 30 days, in which to examine the item or statement of
account and notify the bank. 

Id. § 4.406(d).

 The evidence at trial was undisputed that all of the unauthorized signatures were
made by the same wrongdoer, that payment on all checks was made before Lone Star
received notice from Martinez about the unauthorized checks, and that payment on the last
two checks was made after Martinez had been given a reasonable period of time to
examine the account statements. The statute describes a reasonable period of time as
"not exceeding 30 days." Id. § 4.406(d)(2). Thus, Martinez is precluded from asserting the
unauthorized signature unless he established and obtained a finding that Lone Star did not
pay the check in good faith. See Canfield, 51 S.W.3d at 837. There was no evidence of
lack of good faith on the part of Lone Star as previously discussed under our analysis of
issues one and two. 

 Lone Star also argues that Martinez is not entitled to relief under section 4.406(e). 
Tex. Bus. & Com. Code Ann. § 4.406(e). Section 4.406(e) provides that if "subsection (d)
applied and the customer proves that the bank failed to exercise ordinary care in paying
the item and that the failure contributed to the loss, the loss is allocated between the
customer precluded and the bank asserting the preclusion according to the extent to which
the failure of the customer to comply with subsection (c) and the failure of the bank to
exercise ordinary care contributed to the loss." Id. § 4.406(e). While Martinez did not
obtain a specific finding that Lone Star failed to exercise ordinary care in paying the last
two checks, the court did find that Lone Star made "minimal efforts" to comply with its own
internal safeguards. Further, there was evidence admitted that could have supported a
finding that Lone Star tellers were negligent because they did not ask Sanchez for the
forms of identification set forth in the bank's procedures manual. The trial court impliedly
found that Lone Star was negligent. Under the statute, the loss should be allocated
between the customer and the bank according to the extent to which the failure of the
customer and the failure of the bank each contributed to the loss. Id. § 4.406 (e). Because
the trial court failed to allocate the loss pursuant to the statute, we reverse and remand for
a new trial only with respect to the last two checks.

IV. Conclusion

 The judgment with respect to check number 1448 for $6,500, check number 1446
for $6,450, check number 1450 for $8,000, check number 1449 for $5,500, and check
number 1447 for $3,500 is reversed and rendered that Martinez take nothing. With respect
to the last two checks, number 1599 for $5,800 and number 1598 for $3,350, the judgment
of the trial court is reversed and remanded for proceedings consistent with this opinion. 
The judgment of the trial court is reversed and rendered, in part, and reversed and
remanded, in part. 

 

 

 ROSE VELA

 Justice



Delivered and filed the 25th

day of March, 2010.